The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. All right, let's proceed. First argued case is number 19-2032, Brenner v. Department of Veterans Affairs. Mr. Wheldon, please proceed. Yes, thank you. May it please the Court, good morning, Your Honors. My name is Alan Wheldon and I represent the petitioner Lawrence Brenner. Mr. Wheldon, this is Judge Wallach. I'd like to ask you a couple of housekeeping questions. Yes, Your Honor. Am I correct that Mr. Brenner has abandoned his discrimination claims in keeping with his Rule 15c statement? That's correct, Your Honor. Okay, and on page 40 of the Joint Appendix, the MSPB notes that Mr. Brenner also had a complaint pending before the EEOC. Do you know the status of that? Yes, Your Honor. The administrative judge in that case granted summary judgment on Mr. Brenner's discrimination claim and that the matter is currently under appeal to the EEOC's Office of Federal Operations. In whose favor was that summary judgment granted? Yes, Judge. I'm sorry. It was granted in favor of the agency. Okay. Thank you. May I proceed, Your Honor? Yes, proceed. Okay. Thank you. For purposes of my discussion today, Your Honors, there are three points that I would like to focus on. The first point deals with the retroactive application of 38 U.S.C. 714 to justify petitioner's removal in this case. The second point is the failure of the agency to provide petitioner with procedural safeguards, such as a performance improvement plan and other remediation to which he was entitled once it is determined that 714 could not be applied to allegations that predated the effective date of 714. And also by the agency's reliance on performance issues that occurred more than one year before the proposed removal was issued. These safeguards, Your Honors, are mandated in the VA handbook and by Chapter 43, assuming Chapter 43 would apply here. But is it correct that at least one half year of the issues that were raised were after the enactment of 714 or the effective date? Yeah. I mean, that's certainly a question in the case, Your Honor. This case did not wholly predate the enactment of 714. Part of the case occurred subsequent to 714, and that's certainly one of the exceptions that the government tries to carve out here. However, Charge 1 and Charge 2 predominantly occurred prior to the effective date of the act. The judge would have ruled in only applying Section 714 to part of the case, which was essentially Charge 3, certainly had 714 not applied here to events that occurred prior  to 714, of course, would not have applied. And even assuming arguably that Chapter 43 applied, then the petitioner would have been entitled to certain procedural safeguards, which he did not receive, Your Honor, and which the administrative judge held he was not entitled to, because under the administrative judge's conclusion, Chapter 43 did not apply to the prior acts. So that's certainly one issue. The third issue, Your Honor... Mr. Wallen. Yes. This is Judge Wallen. I want to ask you a couple of factual questions. Sure. On page 27 of the Joint Appendix, the MSPB says, I'm quoting, in support of Charge 2, the VA alleged that Mr. Brenner had backdated his notes in GC Laws to reflect the same-day service in seven cases, despite the fact that no such timely service had been provided. Mr. Brenner doesn't deny that he backdated the entries, does he? Well, he certainly had an explanation for it, Your Honor. He argued that it was certainly nothing intentional, nothing... I understand. That's a yes or no. I'm correct. He doesn't deny it. Well, he doesn't deny it, but he had what he believed to be a legitimate explanation, and those particular entries only were a minor portion of the entries that he made. And many of those entries in that particular charge... Mr. Wallen. Yes. Stop. Yes, Your Honor. If you get a yes or no question, answer yes or no. I have further questions. Yes. You're just in time. Yes, Your Honor. He... Can't. Yeah, he did state that, I don't know that he called it backdated, but he did say that he... Mr. Wallen. ...backdated it. Mr. Wallen. Yes. Let's ask my question. Yes, Your Honor. To the extent he did backdate entries, was it to record the date something actually happened or to conceal the date something actually happened? No, it was not to conceal the date that something happened. Mr. Wallen, wait till I finish my question. That is, is the delayed entry...delayed data entry simply a correction or is it false? That's my question. I don't believe it was false, Your Honor. Okay. Tell me why. Because the services were actually performed and the backdating, to call it that, was simply unintentional and there was certainly no intent on my client to backdate. My client was under a lot of pressure at the time and to the extent that he did backdate it, it was totally unintentional. But the services were performed. Okay. On page 28 of the joint appendix, the MSPB says that when Ms. Duncan subsequently, and I'm quoting, subsequently went into GC Laws, she determined that Mr. Brenner's justification for backdating was actually untrue since 15 of his previously entered entries had not been backdated. Leaving aside the characterization of the work, was Mr. Brenner's justification that he had backdated entries to reflect when work was actually done, rather than input, untrue? No. I thought so. I thought that was your position. Right. About how many GC Laws entries has Mr. Brenner made over the last decade, do you know? I believe it's hundreds, Your Honor. Is 15 a meaningful sample? No. Okay. Why not? Because it was a small percentage of the overall entries he made and it certainly was not characteristic of his performance or his ability to comply with the regulations. Okay. One legal question then. On page 40 of the red brief, the government says, quote, even if the agency were required to apply the Douglas factors, Mr. Brenner has failed to identify any relevant factor that the agency failed to consider. Is there any merit to that argument? No. No. He identified many, many Douglas factors. Certainly, he identified his long past very satisfactory performance. He identified circumstances that preceded the situation here, which came into play, including his accident and resultant disability. He cited his belief that he certainly was able to be rehabilitated and in mitigation of the adverse action. He claimed that there was no, certainly no notoriety to the issues here. He claimed that there were unusual job tensions between he and his supervisor, which I documented. He cited the fact that he did have complaints pending against his supervisors at the time the action occurred. So he claimed a whole host of Douglas factors, Your Honor, which certainly should have been considered in mitigation of the adverse action here. And quite simply, under Sayers and more recently Harrington, this court has indicated that under 714, the assessment of the penalty is part of the overall substantial evidence analysis. And the court here categorically stated, I should say the board here categorically stated that she did not have the authority to consider whether the penalty was appropriate in this case because 714 precluded her. Counsel, this is Judge O'Malley, I'm sorry. What is your response to the argument on the other side that the discussion in Sayers' consideration of the penalty was actually just dicta? Well, I don't believe it was dicta. And I think the court has recently reaffirmed it in Harrington that it was not dicta, that certainly the penalty is an essential part of the overall substantial evidence analysis. And so I don't believe it was dicta at all. I think that the court in my opinion stated and reaffirmed subsequent to Sayers that an assessment of the penalty is an essential element of the overall determination. And I'd add that the agency here tries to carve an exception to performance-related issues. And I believe that 714 covers not only conduct-based issues but performance-based issues as well. That's right in the statute. The court at several junctures in Sayers indicated that 714 applies to performance-based issues as well as conduct-related issues, which would also include the board's having to consider the penalty. Let me ask you a question before you sit down, because I know you want to save some of your time for rebuttal. But assuming we agree with you that Sayers requires remand, what would that remand look like? In other words, are you asking that we say everything needs to be considered without reference to 714 and all of the safeguards that would have been in place prior to 714 should be afforded to Mr. Brenner? Or are you asking that we remand and direct the board to not consider anything that happened before 714 passed? Well, I think that there was a one-year limitation, which is incorporated into Chapter 43 as well as the VA Handbook, which states that you can't go back more than one year. So even if Chapter 43 applied here, and we can't even speculate whether Chapter 43 applied or Chapter 75 applied, but even assuming that Chapter 43 would have applied, then even if the board could consider events that occurred prior to the effective date of the Act, it would be anything that occurred within one year before. And I don't even know, to be honest with you, Your Honor, if that would be anything prior to the effective date. So, yeah, so... Okay, so I guess I'm not quite sure what your answer is. So your answer is, you know, I gave you two options, and you're saying if it's the first option that you want all the protections, then that also would mean that they can't go back more than a year. Right, and I think that would preclude most, if not all, of the allegations. I believe the proposal here was brought in March of 2018. So certainly anything that occurred prior to one year before March of 2017 would not be able to be utilized. And with reference to anything else, then my client would have required a performance improvement plan remediation under Chapter 43, which he never received. Do you think there is enough that occurred after the relevant date, after the passage of 714, that the Board could still proceed with consideration of some kind of penalty? Well, my position would be no, but I do have to concede that there was a portion of the charges, more specifically, Charge 3B, which was subsequent to 714. But again, the whole basis of that was improper because there was no performance improvement plan to begin with. Okay, thank you. Thank you, Your Honors. Anything else for Mr. Whelan at this point? We'll save the rebuttal time. Thank you, Your Honor. Okay, then let's hear from the government. Ms. Speck. Good morning, Your Honor. We respectfully request that the Court affirm the decision of the Merit Systems Protection Board. I want to start out with one threshold issue which I have raised with opposing counsel and that the joint appendix that has been filed in this case is incomplete. It doesn't include several deposition testimony and other documents that I cited in my brief. I've talked to opposing counsel about it and we anticipate filing some kind of motion to file a corrected joint appendix so that all of the appendix pages that are cited are before the Court. When do you have in mind conducting that filing? Your Honor, we'd like to as soon as possible. I'm in the process of identifying. In preparing for this argument, I identified several pages that were not there. I don't know when we'll have the full corrected joint appendix, but we intend to file a motion shortly. Mr. Wolin has been... We've agreed to work together. If there's a date the Court needs it by, we'll certainly also endeavor to make that happen as well. I'd say with all deliberate speed would be appropriate. Okay, proceed. Yes, Your Honor. Mr. Brenner was removed for a pattern of poor performance that began before the Act was passed, which was January 23, 2017, and became worse after the Act was passed. Ms. Speck, this is Judge Wallach. Yes, Your Honor. On page 13 to 14 of the Blue Brief, Mr. Brenner argues that in assessing his response to the DMC, which formed the basis of Charges 1 and 3, the VA's deciding official judged his timeliness based upon the erroneous, I'm inserting that belief, that the SLA requires a legal advisement within seven days after receiving a referral from the DMC, when what he says is it actually requires the response be within seven days of obtaining the facts and documents supporting the DMC request. On pages 19 and 20 of the Red Brief, you argue that, I'm quoting now, Mr. Brenner failed to introduce any evidence that this distinction makes any difference or that he timely submitted his assignments within seven days of receipt of the facts and documents. Two questions. One, was the burden on Mr. Brenner to introduce that evidence? And two, can the VA's determination be supported by substantial evidence if it failed to prove for Charges 1 and 3 that Mr. Brenner was actually late under the rules as they applied? Your Honor, we believe that there's substantial evidence in the record that shows that he failed. We're not talking about a situation in which he didn't meet it by seven days or which he was close. As the MSPB noted on pages 18 through 19 of the Joint Appendix, he did not testify that any of the cases were complicated or that he required additional information and that he didn't dispute missing the deadline. As the Joint Appendix shows and as the agency's decision shows, at least for the Charge 1, he failed to meet the seven-day requirement on 31 occasions ranging from 10 to 147 days and was more than two weeks late in all but four of them. That's reflected in the decision on page Appendix 15 and several were missed by more than 100 days. Counsel, weren't almost all of those events that occurred before the passage of 714? Some of them were for Charge 1. Charge 3 dealt with, I believe we identified in the brief, which there were still several that occurred after June 23, 2017. Also, with respect to Charge 3, which dealt with the next fiscal year, all of the charges were after that and he failed to meet the seven-day deadline for the DMC in 36 instances. I think you're being a little less than clear when you say some or, you know, we're talking the vast majority occurred before 714 was passed, right? No, Your Honor. For Charge 3, it was certainly all of them that occurred after Chapter 714 was passed. Certainly, for Charge 1, I don't have that we, I believe we identified the number in our brief. It's certainly all of the deadlines that are identified in the MSPB's decision. And certainly there were other aspects. It was a vast majority, Counsel. It was a vast majority. But as to that charge, it was at least 20, more like 24 out of 31. But putting that aside and you're unwilling to answer that question, are you arguing that 714 was not retroactively applied at all? Or are you saying that even if Sayers says what it says, that somehow the retroactive application was harmless? We're arguing that Mr., there was some of, it's undisputed that some of his performance issues occurred before June 23, 2017 when the act was passed. Our position is that he was removed and certainly there are, we break it down in our brief. Charges 1 and 2 did include performance that occurred after the act was passed. And so our position is that he was removed for a pattern of poor performance that began before the act was passed and in fact became worse despite repeated counseling. So again, are you saying that 714 was not retroactively applied at all to him? Or are you saying that the retroactive application somehow becomes harmless if the conduct that occurred afterward is similar to the conduct that occurred before? Which is it? It was partially applied retroactively unless the court accepts our argument that there was a pattern of poor performance. Certainly in a Chapter 43 action, the agency can consider performance that occurred before they put him on a performance, the employee on a performance improvement plan. Our position is that he showed no intent despite being repeatedly counseled by his supervisors, despite receiving a written reprimand, despite receiving numerous emails from his supervisors to get better and rehabilitate his performance. Certainly the administrative judge indicated the agency proved charges 1 and 3 by more than substantial evidence. But the administrative judge assumed that 714 governed the entirety of the analysis. Did he not? Yes, Your Honor. Okay. So, and then in addition to things that occurred before 714 was passed, you mentioned things going all the way back to January of 2017. So that would be more than a year before the notice of the proposed removal, wouldn't it? Yes, Your Honor. Okay. So you've got two periods of time that are of concern, regardless of what we're looking at, right? I'm sorry. I don't understand the court's question with the two periods of time. Two periods of time regardless of the statutory governing section, right? We have to consider the period, the things that occurred before 714 was passed and see what impact that might have under Sayers. And we have to consider anything that occurred before the one-year governing limitations period, right? The one-year governing limitations period for what, Your Honor? It occurred more than one year before the notice of proposed removal. Some of the activities that you cite. Yes, Your Honor. Okay. Okay, and do you agree with your friend on the other side that Harrington sort of resolved your argument or disputes your argument, undercuts your argument at least, that the discussion of penalty consideration in Sayers was mere dicta? Yes, Your Honor. Certainly, although we disagree with the holding, we understand that the court said that it was a part of the holding in Sayers. But we note that in the Sayers case, the court did seem to draw a distinction between performance-based cases and misconduct-based cases. And this is certainly the first performance-based case that is before the court. And certainly, the court in its discussion of Lasecki indicated that there are more deference to be afforded to the agency. Sayers did reference both types as did Harrington, didn't it? But both removals in Sayers and the removal in Harrington were about misconduct-based removals. Certainly, like in page 1370... Is it the government's position that there is no misconduct basis in this case? Your Honor, this is considered a performance-based removal. Why? Mr. Brenner didn't meet the criteria under his performance standards. He failed to meet the requirements of timeliness. But other than saying that now, in support of your argument that we can draw a distinction between the two, where in the record did the agency say that there was nothing relating to misconduct? Your Honor, the notice of proposed removal and the removal were based on performance. Certainly... Again, I don't know if the pages are different in what Mr... He didn't include the pages that I cited from the proposed removal in his brief. They were tied to his performance standards for timeliness and professional responsibility and accountability. They were tied to his performance standards not to misconduct. The fact that he failed to perform his work on time and that he failed to adhere to requirements for professional responsibility in his dealings with his supervisors and in his... Counsel, I guess I'm having a really hard time understanding why the government doesn't simply say, look, in light of Sayers and in light of Harrington, it makes sense to have a remand and that you would agree to a remand. Then this whole thing could be done appropriately and his behavior can be considered under all the appropriate standards. I don't understand the battle against that. Your Honor, I'm sorry, Your Honor, I didn't mean to interrupt. The problem is this is the first performance case. We only had misconduct cases before. The court seemed to indicate there was some difference in how it would defer the agency in Sayers with performance versus misconduct. There's also questions we weren't sure exactly how to fashion a remand in considering this. We've argued in our brief that the application of the Douglas factors would deal with the efficiency of the service requirement under 5 U.S.C. 7513. It was unclear if we remanded it if there would have to be an application of the Douglas factors. I think the agency is very much looking for guidance from the court as to how something would proceed if this was remanded because we felt honestly in considering how to proceed with this case, there were a lot of open questions. It wasn't clear often that a remand would not create more problems than it solved. Maybe that's where your argument should have been focused on what a remand should look like. Let me ask you the question I asked to your friend on the other side. If we were to say that under Sayers and Harrington we have no choice but to remand, would we be remanding to say you're not allowed to consider anything before passage of 714? Or would we be remanding to say that you can consider the whole scope of conduct but you have to consider it under Chapter 43 instead of 714 and provide all the protections afforded? He was not removed under Chapter 43. Or Chapter 75. Either one. He was removed under Section 714. I think the court could structure the conduct I think his pre- June 23, 2017 conduct colors this. I think the court could say it needs to be reconsidered based on anything after June 23, 2017. Would that have been sufficient possibly taking into account that there was a pattern of poor performance? He was certainly informed of his poor performance before the statute was passed and it got worse and not better. So one option would be just considering his post-June 23, 2017 conduct. Not conduct, performance issues. But if you're saying that they would still be allowed to take into consideration the things that occurred before then aren't you still retroactively applying the statute? If that's the case if it is a pattern and the pattern predates 714 don't you just have to walk away from 714? I don't think the agency has to walk away from 714. 714 was certainly designed so that the agency could more expeditiously remove poor performers or employees that have committed misconduct. It seems odd that they have to pretend it didn't happen. Counsel, after the passage of the statute so if you want to use 714 doesn't that limit your ability to look backward? The court wants to say that it absolutely cannot be the Viacom case which indicated that the court could look at a pattern and it seems odd to say that the agency has to pretend that nothing ever happened prior to the statute but certainly I think there's enough here after June 23, 2017 to indicate that he was aware that he had performance related issues and did nothing to improve them and in fact got worse. I see my time is up. If the court has no further questions, we respectfully request that the court affirm the MSPB's decision. Thank you. Anything else for Ms. Beck from the panel? Not for me, thank you. No thank you. Okay, thank you. Then we'll hear from Mr. Whelan and you have your full rebuttal time. Yes, thank you, Your Honor. First of all, I want to make it perfectly clear that before the effective date of the act, my client was not placed on any type of notice that his performance was deficient. In fact, in May of 2017, shortly before 714 was enacted, he received his mid-year appraisal. That mid-year appraisal was fully successful in May of 2017. Fully successful. At that time, he had a sit-down with the supervisor. Supervisor never mentioned any of the allegations which were then, several months later, utilized in the notice of proposed removal. So I just want to make that very clear that my client was not placed on any notice of any performance-related issues prior to the effective date of the act and the mid-year confirms that. Any remand that would involve events that occurred prior to the effective date of the action, even utilizing Chapter 43 as the basis of that would, in my estimation, be invalid because he was not provided with the safeguards. The government wants both ways here and it can't have both ways. It says that there's no retroactivity here because the application one way or the other was harmless because the same standard would apply under 43. But again, it ignores the fact that my client had these procedural safeguards, the performance improvement plan, the one-year statute, all of that which would have effectively placed him on notice. That was the whole concomitant intent in Chapter 43. You can make it easier to remove someone for performance-related issues. Well then, on the other hand, give that person the rights in order to make sure that if he is going to be terminated for performance-related issues, that he had every opportunity to improve. My client here, prior to the effective date of the act, never had that opportunity to improve. There was no pattern here. So, in my estimation, that if this matter does get remanded, nothing that happened prior to the effective date of the act should even come into play because clearly, once you conclude that Section 714 did not apply to the prior acts, then clearly, if Chapter 43 applied, then he did not receive any of those safeguards, which was a gross violation and which was in no respect harmless. And I might add, as Uranus touched upon, that a lot of these allegations do have misconduct involved. We spoke about the allegation that he backdated GC laws. Well, that certainly has misconduct overtones. We talked about the allegation that he did not provide a draft of a letter which his supervisor had requested in a timely fashion. Well, that has misconduct overtones. So, I'm not convinced that even if this action had not been brought under 714, that it would have been properly brought under Chapter 43. Perhaps it should have been brought under Chapter 75 and then we get into all of these other issues concerning the different burdens of proof and all of that. So, in my estimation, the government wants to have it both ways and they cannot have it both ways. Please finish your thought. I'm sorry, Your Honor? No, I said please finish what you're telling us. And just one other point. There is no distinction in 714 and this Court has made no distinction in its previous decisions that performance-related issues does not apply to 714. 714 abrogated Chapter 43 with reference to the VA and there's no distinction to be carved between performance-related issues and misconduct-related issues. Thank you, Your Honors. Any more questions for Mr. Whelan? No, thank you. Okay, thanks to both counsel. The case is taken under submission.